UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

ADVANCED AEROFOIL TECHNOLOGIES, AG, a
Swiss Corporation, ADVANCED AEROFOIL
TECHNOLOGIES, INC., a Delaware                    13 Civ. 7181 (RWS)
Corporation, and ADVANCED AEROFOIL
TECHNOLOGIES GMBH, a German Corporation                OPINION

                    Petitioners,

        - against -

THOMAS TODARO, ADVANCED ENGINEERING
TECHNNOLOGIES, INC., ANTHONY CHALDER,
MARK TARBY, CHARLES BYRD, and DENNIS
PFISTER

                    Respondents.

-------------------------------------X

A P P E A R A N C E S:

        Attorneys for the Petitioners

        COLE SCHOTZ MEISEL FORMAN & LEONARD, PA
        25 Main Street, Court Plaza North
        Hackensack, NJ 07601
        By:  Leo V. Leyva, Esq.
             James T. Kim, Esq.
             Lauren M. Manduke, Esq.

        Attorneys for the Respondents

        YOUNG & ASSOCIATES
        27725 Stansbury Blvd., Suite 125
        Farmington Hills, MI 48334
        By:  Jaye Quadrozzi, Esq.

**Sweet, D.J.**


Respondents    Thomas    Todaro    ("Todaro"),    Advanced
Engineering   Technologies,   Inc.   ("AET"),   Anthony   Chalder
("Chalder"), Mark Tarby ("Tarby"), Charles Byrd ("Byrd"), and
Dennis Pfister ("Pfister") (collectively the "Respondents") have
moved to dismiss the Petition to Vacate the Arbitration Award
("Petition")   submitted   by   Petitioners   Advanced   Aerofoil
Technologies  AG,  Advanced  Aerofoil  Technologies,  Inc.  and
Advanced   Aerofoil   Technologies   GmbH   (collectively   the
"Petitioners" or "AAT") and to confirm the July 16, 2013 "Award"
entered  by  the  International  Center  for  Dispute  Resolution
("ICDR") in New York, New York (the "Award") (collectively with
the Partial Final Award, dated March 6, 2013 (the "Partial Final
Award"), Final Award dated April 22, 2013 (the "Final Award"),
the "Awards").


Based on the reasoning below, Respondents' motions are
granted and the Award is confirmed.


**Prior Proceedings**


On September 17, 2013, Petitioners filed the Petition
in the Supreme Court of New York, New York County.  The Petition

1

alleges that the Respondents planned and executed a scheme to
start a direct competitor to AAT and to defraud AAT by theft of
AAT resources and technologies.  Pet. ¶ 8.  It seeks vacatur of
the Award, which awarded damages to Respondents in an
arbitration based on the same allegations Petitioners' make in
the Petition (the "Arbitration").   On October 10, 2013, the
Petition was removed to this Court on diversity jurisdiction
grounds.  Respondents filed the instant motion to dismiss on
October 11, 2013, and briefing was submitted by both parties.
Oral arguments were held, and the motion was marked fully
submitted, on November 26, 2013.


**The Allegations Of the Petition**


        The allegations in the Petition relevant to the
instant action are as follows:


        AAT manufactures precision investment castings for use
in the power generation and transportation industries.   Pet.
¶¶ 21-25.   Byrd, Pfister and Todaro are former executive
managers and/or officers of AAT.   *Id.* ¶ 8.   Chalder and Tarby
are former employees of AAT.   *Id.* ¶ 28.  Petitioners allege that
Byrd, Pfister, Todaro, Chalder and Tarby (the "Individual
Respondents") formed a direct competitor to AAT, Flowcastings,

GmbH ("Flowcastings") and planned and executed a scheme to steal AAT's resources, technologies and customers. *Id.* ¶ 8.

The Individual Respondents resigned from AAT from March to June 2011. *Id.* ¶¶ 26, 29. On September 2, 2011, the parties entered a Confidential Termination Agreement (the "Termination Agreement"). *Id.* ¶¶ 4, 30. At the time the Termination Agreement was signed, Petitioners had no knowledge of the existence of Flowcastings or of Respondents' alleged scheme. *Id.* ¶ 30.

The Termination Agreement contains several provisions: (1) a mutual general release of all claims by the parties against each other, as well as a covenant not to sue, *id.* ¶ 6; (2) a requirement that the parties arbitrate any dispute concerning the Termination Agreement, *id.* ¶ 5; (3) a New York choice of law provision, *id.* ¶ 5; and (4) a provision that nothing therein is intended to prevent either party from obtaining injunctive relief to prevent irreparable harm pending the conclusion of arbitration, *id.* ¶ 5. The Termination Agreement also provides that "[e]xcept as specifically set forth herein, the parties will bear their own costs, expenses, and attorneys' fees . . . incurred in or arising out of or in any way related to the matters released herein." Pet. Ex. B,

3

Termination Agreement § 10(d).

Petitioners learned of the formation of Flowcastings and the Respondents' alleged conspiracy after the signing of the Termination Agreement. *Id.* ¶ 32. Consequently, in November 2011, the Petitioners filed a Complaint in the United States District Court, Northern District of Illinois seeking injunctive relief against Respondents and their alleged co-conspirators. *Id.* ¶ 33. The Illinois federal court found that it lacked personal jurisdiction over the Respondents, and dismissed the Complaint in November 2011. *Id.* Petitioners then filed a complaint in the Southern District of New York in December 2011. *Id.* ¶ 34. That matter was dismissed for lack of subject matter jurisdiction. *Id.*

On September 17, 2012, Petitioners submitted a statement of claims to ICDR and commenced the Arbitration. Pet. ¶ 35. Petitioners sought an award declaring that the Termination Agreement and release were void and unenforceable, requiring Respondents to return all property in their possession belonging to Petitioners and prohibiting Respondents from using or disclosing Petitioners' confidential and proprietary information. *Id.* ¶ 35. Respondents in turn submitted counterclaims in the Arbitration ("Counterclaims"). A sole

4

arbitrator was appointed (the "Arbitrator") for the Arbitration.

On March 6, 2013, after the submission of evidence and briefing by the parties and a hearing, the Arbitrator delivered the Partial Final Award.  The Partial Final Award determined that "no credible evidence" was presented by AAT to support its claims.  Partial Final Award ¶ 4.12.  It further granted Respondents' counterclaim for a declaration that the Termination Agreement was valid and enforceable.  Pet. ¶ 39; Partial Final Award ¶ 6.2.  The Arbitrator deferred decision on the counterclaim for damages for breach of the Termination Agreement by Petitioners, Respondents attorneys' fees, pending additional briefing.  Pet. ¶ 39.

The parties submitted additional briefing on the issue, in which Petitioners argued that Respondents were not entitled to an award of attorneys' fees or costs in light of the terms of the Termination Agreement, which required the parties to bear their own attorneys' fees and costs.  *Id.* ¶ 41.

On April 22, 2013, the Arbitrator issued the Final Award.  The Final Award rendered judgment against Petitioners and in favor of Respondents on the counterclaim for breach of the Termination Agreement and awarded damages in the form of

5

costs and reasonable attorneys fees.  *Id.* ¶ 43.  Subsequently, the Award was issued on July 16, 2013, which set out the specific sums Petitioners owed Respondents.  Award ¶¶ 4.1.1-4.8.

**The Applicable Standard**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *County of Suffolk, N.Y. v. First Am. Real Estate Solutions*, 261 F.3d 179, 187 (2d Cir. 2001) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007)).  This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## The Petition To Vacate The Award Is Denied

Under both New York State and Federal law, the scope of judicial review of arbitral awards is narrow.  New York CPLR article 75 evidences the intent of the New York Legislature that, once it is clear that a valid agreement to arbitrate has been made and complied with and that the claim sought to be arbitrated is not barred by limitations, the authority of the arbitrator is plenary consistent with the public policy in favor of arbitration.  *See* N.Y. CPLR § 7501; *Silverman v. Benmor Coats, Inc.,* 61 N.Y.2d 299, 300, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984).  The grounds specified in CPLR § 7511 for vacating or modifying an arbitration award are few in number and are narrowly applied.  "Courts are reluctant to disturb the decisions of arbitrators lest the value of this method of resolving controversies be undermined." *Goldfinger v. Lisker,* 68 N.Y.2d 225, 230, 508 N.Y.S.2d 159, 500 N.E.2d 857 (1986) (citations omitted).  Thus, the list of potential objections in CPLR § 7511(b) and (c) is exclusive.  *Geneseo Police Benevolent*

*Ass'n, Council 82 v. Village of Geneseo,* 91 A.D.2d 858, 458 N.Y.S.2d 384 (4th Dep't 1982), *aff'd* 59 N.Y.2d 726, 463 N.Y.S.2d 440, 450 N.E.2d 246 (1983).

CPLR § 7511(b)(1) lists several grounds for vacatur:

(b) Grounds for vacating.

1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

Petitioners contend that (i) the Arbitrator "exceeded his power in the Arbitration by, among other things, giving a completely irrational construction to applicable case law as well as the provisions of the Termination Agreement that were in dispute, in effect, making a new contract for the parties, Pet.

8

¶ 54, and (ii) because the Arbitrator engaged in a manifest disregard of the law in violation of CPLR § 7511(b)(1).[1] Petitioners contend that the Arbitrator exceeded his powers in the Arbitration by ignoring the applicable provisions of the Termination Agreement that expressly provide that the parties are responsible for their own attorneys' fees and costs, applying federal common law (*i.e.*, the "*Artvale*" doctrine), rather than New York law, in awarding over $300,000 in attorneys' fees to Respondents and disregarding governing law. Pet. Op. at 3.   Petitioners' contentions essentially challenge the Arbitrator's choice of law and application of the law to the facts.

An arbitrator will be deemed to have "exceeded his power" within the meaning of CPLR § 7511(b)(1)(iii) only when: (1) the arbitrator has exceeded a specifically enumerated limitation on his authority; (2) the decision is totally irrational; or (3) the award violates a strong public policy. *Board of Educ. of the Dover Union Free School Dist. v. Dover-Wingdale Teachers' Ass'n,* 61 N.Y.2d 913, 915, 474 N.Y.S.2d 716, 463 N.E.2d 32 (N.Y. 1984); *Rochester City Sch. Dist. v.*

---

[1] The "manifest disregard" doctrine is a federal doctrine that allows vacatur of an arbitral award outside of the explicit grounds set in Section 10 of the Federal Arbitration Act ("FAA"). *See Sidarma Societa Italiana Di Armamento Spa v. Holt Marine Indus., Inc.*, 515 F. Supp. 1302, 1306 (S.D.N.Y. 1981). Petitioners' arguments linking manifest disregard to CPLR § 7511 is thus seen as contentions of the Awards' violations of federal law.

*Rochester Teachers Ass'n,* 41 N.Y.2d 578, 582, 394 N.Y.S.2d 179, 362 N.E.2d 977 (N.Y. 1977).


As an initial matter, to the extent Petitioners seek vacatur on the grounds that the Arbitrator lacked the authority to decide the controversy, "[a] party who actively participates in arbitration without seeking a stay pursuant to CPLR 7503(b) waives the right to a judicial determination of the arbitrability of the dispute." *In re Jandrew (Cnty. Of Cortland)*, 923 N.Y.S.2d 778, 780 (3d Dep't 2011); *see also Matter of United Federation of Teachers, Local 2, AFT, AFL–CIO v. Board of Educ. of City School Dist. of City of N.Y.*, 801 N.E.2d 827, 1 N.Y.3d 72, 79, 769 N.Y.S.2d 451 (N.Y. 2003); *Rochester City School Dist.,* 362 N.E.2d 977, 41 N.Y.2d 578, 583, 394 N.Y.S.2d 179. Respondents made claims for damages when they filed the Counterclaims. AAT did not seek a stay of the arbitration proceedings in the Arbitration on the basis that the Counterclaims were in excess of the arbitrator's power. Even if the Arbitrator ignored the provisions in the Termination Agreement that prohibits the award of attorneys' fees, Petitioners "waived [their] right to contest the arbitrator's power to decide the controversy." *In re Jandrew*, 923 N.Y.S.2d at 781.

10

Furthermore, "[t]he Court of Appeals has 'stated time and again that an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator and the courts should not assume the role of overseers to mold the award to conform to their sense of justice.'" *Miro Leisure Corp. v. Prudence Orla, Inc.*, 922 N.Y.S.2d 424 (2d Dep't 2011) (citing *Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 479-480 (N.Y. 2006)). An arbitrator "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement...." *Silverman,* 461 N.E.2d 1261, 61 N.Y.2d at 308, 473 N.Y.S.2d 774.

The Arbitrator clearly made careful consideration of both the language in the Termination Agreement and the law before reaching his conclusion that the Termination Agreement did not bar the Counterclaims. Final Award ¶¶ 2.9-2.11. A review of the Final Award shows that it was carefully reasoned in its rejection of Petitioners' arguments that the Termination Agreement does not allow the recovery of costs and attorneys' fees. *Id.* Specifically, the Arbitrator noted that the Termination Agreement did not contain "an absolute prohibition on the recovery of costs and fees," *id.* ¶ 2.9; concluded that "a claim for attorneys' fees in connection with mandatory

arbitration ... may not be recovered," *id.* ¶ 2.10; that the exception in the Termination Agreement "to the preclusion of costs and fees can be and should be read to apply to breaches of the parties' covenants not to sue," *id.*; and that "the parties left open the possibility of claiming reimbursement for costs and fees in connection with judicial litigation and arbitration of claims not relating to matters released in the [Termination] Agreement," *id.* ¶ 2.11.   These determinations were well within the Arbitrator's authority.

Petitioners contend that the Arbitrator impermissibly applied *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir. 1966), since *Artvale* is federal common law and not New York law, and this adoption of federal common law exceeded the Arbitrator's powers.

Notwithstanding that the Arbitrator reached his initial conclusion regarding the permissibility of the Counterclaims based on the language in the Termination Agreement, application of *Artvale* was not an exercise of power in excess of the grant provided to the Arbitrator under the Termination Agreement.  *Artvale* is the Second Circuit's view on New York law pertaining to litigation expenses due to a party who breaches a covenant not to sue.  363 F.2d at 1008.  *Artvale*

12

has never been endorsed by New York state courts. *See Versatile Housewares & Gardening Sys., Inc.*, 819 F. Supp. 2d 230, 245 (S.D.N.Y. 2010). However, as the Final Award noted, "[b]oth [Petitioners] and Respondents cite[d] the *Artvale* decision to support their arguments," *see* Final Award ¶ 2.13, and in the end the Arbitrator rejected Petitioners' construction of the case, *id.* ¶ 2.20. In doing so, the Arbitrator rejected AAT's claim that it was protected under the "good faith" exception to *Artvale*. *Id.* "An arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'" *Wien & Malkin LLP*, 461 N.E.2d 1261, 6 N.Y.3d at 479, 473 N.Y.S.2d 774. The Arbitrator clearly considered the law in general, *Artvale* specifically and the Petitioners' arguments with respect to *Artvale*. *See* Final Award ¶¶ 2.21-2.26. The Final Award provides more than mere "colorable justification" for its decision, and the Arbitrator did not exceed his power in violation of CPLR § 7511.

With respect to Petitioners' contention that the Arbitrator engaged in manifest disregard of the law, none of the Arbitrator's alleged errors arises to a level that would meet the federal standard. Under the manifest disregard doctrine, an award can be vacated if it exhibits a "manifest disregard of law." *Duferco Intl. Steel Trading v T. Klaveness Shipping A/S*,

13

333 F.3d 383, 388 (2d Cir 2003); *Goldman v Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir 2002) (citing *DiRussa v Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir 1997)). The doctrine is "severely limited" and is the "doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco*, 333 F.3d at 389. It must be "more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Id.* Manifest disregard can be found "only if a reviewing court ... find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citations and internal quotation marks omitted).

As an initial matter, insofar as Petitioners' claim manifest disregard based on the insufficiency of the Arbitrator's reasoning in the Awards, "arbitrators are not required to provide an explanation for their decision." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted).

14

Petitioners contend that two legal issues, the Arbitrator's application of *Centro Empresarial Cempresa SA v. Am. Movil SAB*, 952 N.E.2d 995, 17 N.Y.3d 269, 929 N.Y.S.2d 2 (N.Y. 2011), and analysis on *Artvale*, constitute manifest disregard of law. Review of the Awards shows Petitioners' contentions are incorrect.

First, the Arbitrator's application of *Centro* fails to meet the high standards for manifest disregard. Petitioners contend that the Arbitrator improperly applied *Centro* and ignored *Global Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006), when *Global* was directly on point regarding Petitioners' claims for fraudulent inducement of a release. Pet. Opp. at 7; *see also* Partial Final Award ¶ 4.1. The Awards do not support Petitioners' contention.

Both *Centro* and *Global* were addressed by the parties in their post-hearing briefs. *See* Pet. Opp. at 7; Resp. Reply at 7. The issue as to whether one case or the other applied was thus raised to the Arbitrator. The Partial Final Award also devoted several pages to analyze and explain *Centro's* applicability to the facts. *See* Partial Final Award ¶ 4.1-4.6. Moreover, *Centro* was decided by the New York Court of Appeals and post-dates *Global*, a First Department decision. That the

15

Arbitrator chose to cite to and apply *Centro*, an opinion from the court of "final authority on [New York] state law", *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177, 61 S. Ct. 176, 85 L. Ed. 109 (1940), rather than *Global* does not amount to an "egregious misapplication of legal principles" that would justify a finding of manifest disregard. *See Wallace*, 378 F.3d at 190 ("[M]anifest disregard of law doctrine [is used] to vacate arbitral awards only in the most egregious instances of misapplication of legal principles.").

Second, with regards to the application of *Artvale*, the Arbitrator's decision to apply *Artvale* does not rise to the level of statutory vacatur under CPLR 7511 and thus cannot be manifest disregard for the standard for judicial review for manifest disregard is at least as strict as statutory vacatur. *See Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515 (2d Cir.), *aff'd* 502 U.S. 942 (1991). In addition, a court must confirm an arbitral award if a justifiable ground for the decision can be inferred even where an explanation for it is deficient or non-existent. *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010); *Wallace*, 378 F.3d at 190 (arbitrators do not need to provide an explanation for their decision); *Willemijn Houdstermaatschappij*, 103 F.3d at 12 (same). As previously noted, the Arbitrator's decision to

16

apply *Artvale* was not devoid of any colorable justification. *See* Final Award ¶¶ 2.21-2.26.   Moreover, while *Artvale* involved the Second Circuit's interpretation of New York law regarding litigation expenses due to a party who breaches a covenant not to sue, and New York state courts have not adopted the Second Circuit's view, New York courts have not rejected *Artvale*.   *Pet. Opp.* at 5.   No clear governing legal principle or well defined, explicit and clear law was ignored by the Arbitrator.   As such, the Arbitrator's choice to adopt *Artvale sub silentio* was not manifest disregard of the law.

Petitioners have not shown that the Award must be vacated on statutory grounds or that the Arbitrator committed manifest disregard of the law, burdens Petitioners bear. *Wallace*, 378 F.3d at 189 ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." (internal quotation marks and citation omitted)).   CPLR § 7511(e) provides that upon a denial of a motion to vacate, a court should confirm an award. The F.A.A., 9 U.S.C. § 9 provides that upon an application for an order to confirm an arbitration award, the court must do so, unless the award is vacated, modified, or corrected under § 10 or § 11."   *Yonir Tech., Inc. v. Duration Systems (1992) Ltd.*,

17

244 F. Supp. 2d 195, 211 (S.D.N.Y. 2002).  Accordingly, the Petition must be dismissed and the Award confirmed.

## Conclusion

Based on the reasoning set forth above, Respondents' motions to dismiss the Petition and confirm the Award are granted.  Submit judgment on notice.

It is so ordered.

**New York, NY**
**April /5, 2014**

ROBERT W. SWEET
U.S.D.J.